## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHARLES GOODINSON,         )
                                   )    Case No.  3:22-1320
                                   )
         Plaintiff,      )
vs.                               )
                                 )    JURY TRIAL
JOHNSON & JOHNSON, ET AL.,   )    DEMANDED
                                 )
         Defendants.    )

## <u>NOTICE OF REMOVAL</u>

Defendants Medical Device Business Services, Inc., f/k/a DePuy Orthopaedics, Inc. ("DePuy") and DePuy Synthes Sales, Inc. (together, the "DePuy defendants"), through undersigned counsel, hereby remove the state-court action entitled *Charles Goodinson v. Johnson & Johnson*, Civil Action No. MID-L-000708-22, filed in the Superior Court of New Jersey, Middlesex County, to this Court.  Removal is warranted under 28 U.S.C. § 1441(b), because this is a diversity action over which the Court has original jurisdiction under 28 U.S.C. § 1332.

In support of removal, the DePuy defendants state as follows:

1.     On or about February 9, 2021, plaintiff commenced this action against the DePuy defendants, Johnson & Johnson and Johnson & Johnson Services, Inc. (the latter two defendants are collectively referred to herein as the "J&J defendants") by filing a complaint in the Superior Court of Middlesex County, in the State of New Jersey, bearing case number MID-L-000708-22.

2.     Plaintiff alleges that he suffered various injuries as a result of being implanted with a Pinnacle Acetabular Cup System ("Pinnacle Cup System") marketed and sold by DePuy. (*E.g.*, **Ex. A** ("Compl.") ¶¶ 16-18, 33, 114-125.)

3.     This is one of thousands of similar cases filed around the country involving personal injury allegations by plaintiffs who were implanted with a Pinnacle Cup System.   On May 23, 2011, the Judicial Panel on Multidistrict Litigation issued an order establishing MDL No. 2244, *In re DePuy Orthopaedics Inc., Pinnacle Hip Implant Products Liability Litigation*, before Judge Ed Kinkeade in the United States District Court for the Northern District of Texas. The DePuy defendants intend to seek the transfer of this action to that proceeding, and will shortly provide the MDL Panel notice of this action pursuant to the "tag-along" procedure contained in the MDL Panel Rules.

4.     In addition to this action, counsel for Mr. Goodinson has filed five other virtually identical cases in New Jersey:  *Altholz v. Johnson & Johnson*, No. 3:21-cv-20768-ZNQ-LHG (D.N.J.); *Shelnutt v. Johnson & Johnson*, No. 3:21-cv-20777-ZNQ-LHG (D.N.J.); *Thick v. Med. Device Bus. Servs., Inc.*, No. 3:21-cv-03090-K (N.D. Tex.); *Hitchcock v. Johnson & Johnson*, No. 3:21-cv-03091-K (N.D. Tex.); *Monical v. Johnson & Johnson*, No. 3:21-cv-20202-FLW-TJB (D.N.J.).  Both *Thick* and *Hitchcock* have already been transferred to the MDL proceeding, and the other three cases are subject to conditional transfer orders.

5.     As set forth more fully below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, and the DePuy defendants have satisfied the procedural requirements for removal.

## I.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

6.     This Court has subject-matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§ 1332 and 1441, because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.

### A.     Complete Diversity Of Citizenship

7.     Plaintiff alleges that at "all times relevant hereto, [he] was a resident of Wisconsin." (Compl. ¶ 1.)  Accordingly, he is a citizen of Wisconsin.

8.     DePuy is, and was at the time plaintiff commenced this action, an Indiana corporation with its principal place of business in Warsaw, Indiana.  It is therefore a citizen of the State of Indiana for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

9.     DePuy Synthes Sales, Inc. is, and was at the time plaintiff commenced this action, a Massachusetts corporation with its principal place of business in

Raynham, Massachusetts.  It is therefore a citizen of the State of Massachusetts for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

10.    Johnson & Johnson is a non-manufacturing holding company.  (*See* **Ex. B**, Decl. of Douglas K. Chia ("Chia Decl.") ¶¶ 8, 9, *Dooley v. DePuy Orthopaedics, Inc.*, No. 2:12-cv-01593-DMC-JAD (D.N.J. Mar. 6, 2012).)   In 1998, Johnson & Johnson acquired DePuy, Inc.  (*Id.* ¶ 5.)  Johnson & Johnson is, and was at the time plaintiff commenced this action, a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  (*Id.* ¶ 2.)  It is therefore a citizen of the State of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

11.    Johnson & Johnson Services, Inc. is a wholly-owned subsidiary of Johnson & Johnson.  (Chia Decl. ¶ 4.)  It provides services to various Johnson & Johnson subsidiaries, which are paid for by the subsidiaries.  (*Id.* ¶ 9.)  It has no ownership interest in DePuy and does not manufacture any products of its own. (*Id.* ¶¶ 6, 9.)  It is, and was at the time plaintiff commenced this action, a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  (*Id.* ¶ 4.)  It is therefore a citizen of the State of New Jersey for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

12.    Plaintiff is diverse from all properly joined defendants.

13.    Although removal is ordinarily improper where a "properly joined" defendant is a "citizen of the State in which such action is brought," *see* 28 U.S.C. § 1441(b), the citizenship of the J&J defendants should be ignored because they were fraudulently joined, *see Lopienski v. Centocor, Inc.*, No. 07-4519 (FLW), 2008 WL 2565065, at *2 (D.N.J. June 25, 2008) (explaining that fraudulently joined defendants are ignored for purposes of the forum-defendant rule set out in 28 U.S.C. § 1441(b)); *Clark v. Nat'l Shipping Co. of Saudi Arabia*, 552 F. Supp. 2d 576, 578 (E.D. Va. 2008) (same).

14.    A defendant is fraudulently joined "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Lopienski*, 2008 WL 2565065, at *2 (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)); *see also UE Grp., LLC v. J & B Holding Co.*, No. 09-6088 (JAP), 2010 WL 3937138, at *2 (D.N.J. Oct. 4, 2010) (similar).  In such a case, the resident defendant is deemed a "nominal" party whose citizenship must be disregarded by the district court. *Lopienski*, 2008 WL 2565065, at *2-3; *see also Roggio v. McElroy, Deutsch, Mulvaney & Carpenter*, 415 F. App'x 432, 433 (3d Cir. 2011) (similar).  Here, the J&J defendants are fraudulently joined because there is no "reasonable basis" to support plaintiff's

claims for direct liability against them, and there is also no basis for piercing the corporate veil.

**(1)** **There Is No Reasonable Basis For Plaintiff's Claims Against The J&J Defendants For A Host of Reasons.**

15.     Plaintiff asserts claims against the J&J defendants for violations of the New Jersey Product Liability Act ("NJPLA") and breach of express warranty.  (*See* Compl. ¶¶ 126-178.)  As set forth below, neither of plaintiff's claims would have any chance of success for multiple reasons.

16.     *First*, plaintiff's NJPLA claims for failure to warn, defective design and defective manufacture are not cognizable against any defendant because New Jersey law does not apply.  Under New Jersey's choice-of-law rules, plaintiff's tort claims are governed by the law of the state where he received his hip implant and allegedly suffered injury as a result:  Wisconsin.  *See, e.g.*, *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 882 (D.N.J. 2010) (applying New Jersey choice-of-law principles in holding that Texas had the most significant relationship and therefore Texas law governed plaintiffs' claims because, *inter alia*, the plaintiff purchased and ingested the disputed drug in Texas, and "the only factor that conceivably weigh[ed] against Texas" was the defendant's presence in New Jersey).  For example, in *Mills v. Ethicon, Inc.*, the court applied New Jersey choice-of-law principles and held that Pennsylvania law governed plaintiff's claims arising out of a purportedly defective product because "[t]he events

essential to th[e] litigation occurred in Pennsylvania." 406 F. Supp. 3d 363, 376 (D.N.J. 2019). In particular, the court noted that the plaintiff "[wa]s a resident of Pennsylvania, . . . the allegedly defective product was used and caused harm in the state of Pennsylvania" and "[the plaintiff]'s surgeries, during which the product was implanted, also occurred in Pennsylvania." *Id.* As the court explained, "New Jersey has a tenuous connection to the harm caused to [the plaintiff], and therefore has little interest in having its products liability law enforced to protect the rights and interests of a non-resident" where the only connection to New Jersey was that one named defendant was "incorporated in th[e] state." *Id.*

17.    So too here. Plaintiff's Complaint alleges that, at all relevant times, he was a resident of Wisconsin and received his hip implant in Wisconsin. (Compl. ¶¶ 1, 114.) The only "tenuous connection" to New Jersey is the J&J defendants' incorporation and principal place of business in this State. But, as elaborated *infra*, those two defendants are fraudulently joined because they played no role in the design, manufacture or sale of the Pinnacle Cup System. Accordingly, although plaintiff asserts causes of action under the NJPLA based on two peripheral defendants' corporate citizenship, none of those causes of action could possibly succeed because New Jersey law clearly does not apply in this case.

18.    Moreover, even if New Jersey law were to apply, plaintiff would still have no cause of action against the J&J defendants because they did not

manufacture or sell the product. *See, e.g.*, *Lopienski*, 2008 WL 2565065, at *4 (J&J was fraudulently joined with respect to claims under the NJPLA because it "does not design, formulate, produce, create, make, package, or label or construct Remicade" and "[p]laintiff's allegations of interactions between J & J and Centocor are no more than a strained attempt at linking the two entities").

19.    New Jersey law is not unique in this regard.  Courts across the country have recognized that an in-state parent or sister company, such as either of the J&J defendants, is fraudulently joined where, as here, its sole connection to a product-liability action is its corporate relationship with the actual manufacturer of the product.  *See Higley v. Cessna Aircraft Co.*, No. CV 10-3345-GHK (FMOx), 2010 U.S. Dist. LEXIS 91153, at *1-2, *8-9 (C.D. Cal. July 21, 2010) (finding fraudulent joinder where parent company "was not involved in the manufacture or sale of the engine or fuel pump" in question); *McConkey v. McGhan Med. Corp.*, 144 F. Supp. 2d 958, 962-63, 966 (E.D. Tenn. 2000) (dismissing claims against former parent company because plaintiffs' asserted claims "lack one essential element: [the former parent company] did not design, manufacture, or sell the breast implants in question").

20.    ***Second***, plaintiff's express warranty claim against the J&J defendants also has no possibility of success.

21.     Under Wisconsin law, a claim for breach of express warranty may only be brought against a seller or manufacturer of the product.  *See* Wis. Stat. Ann. § 402.313(1) ("Express warranties by the ***seller*** are created as follows. . . .") (emphasis added); Wis. Stat. Ann. § 402.313(1)(a) ("Any affirmation of fact or promise made by the ***seller*** to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.") (emphasis added); *see also Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *5 (W.D. Wis. Sept. 28, 2005) (recognizing that claims for breach of express warranty against manufacturers may lie where "the warranty was disclosed to and relied upon by the purchaser so as to become part of the basis of the bargain as required by Wisconsin Statutes § 402.313").

22.     As set forth in the attached declaration of Douglas Chia, the J&J defendants never manufactured or sold the Pinnacle Cup System.  (*See* Chia Decl. ¶¶ 11-12.)  Accordingly, plaintiff's claims for breach of express warranty and strict product liability against the J&J defendants are not cognizable.

23.     While plaintiff lodges generic allegations that the J&J defendants were engaged in the production of the Pinnacle Cup System (*see, e.g.,* Compl. ¶ 7 (alleging "Johnson & Johnson" was "the responsible authority over the research, development, testing, manufacture, production, marketing, promotion, distribution

and/or sale of the product at issue"); *id.* ¶ 18 (alleging that "J&J designed, manufactured and sold the MoM Pinnacle system")), these allegations are directly contradicted by evidence showing that the J&J defendants are mere parent and sister companies, and therefore need not be taken as true, *see, e.g.*, *Lundy v. Cliburn Truck Lines, Inc.*, 397 F. Supp. 2d 823, 829 (S.D. Miss. 2005) (holding that plaintiffs had "fatally erred by simply relying on the allegations in the [c]omplaint to defeat diversity [of] citizenship" in light of non-diverse defendant's affidavit to the contrary and, "[i]n the absence of proof to the contrary," the assertions in the affidavit "must be taken as true"). Moreover, the vast majority of plaintiff's allegations – which refer collectively to "Defendants" or "J&J" (*see, e.g.*, Compl. ¶ 106 (alleging "Defendants were made aware of . . . failures but failed to warn patients or surgeons of such failures and failed to recall the Pinnacle [Cup System]"); *id.* ¶ 125 (claiming "[a]s a direct and proximate result of Defendants' defective design, manufacturing, marketing, distribution, sale and warnings of the defective Pinnacle implant, Plaintiff has suffered")) – fail to distinguish between each individual defendant, thereby demonstrating that plaintiff fails to assert any colorable claim against the J&J defendants specifically, *see, e.g.*, *Hall v. OrthoMidwest, Inc.*, 541 F. Supp. 3d 802, 811 (N.D. Ohio 2021) (failure to "distinguish[] between which [d]efendant allegedly made any representation to which the product may not have conformed" demonstrates fraudulent joinder); *see*

10

*also Banxcorp v. Apax Partners, L.P.*, No. 10-4769 (SDW)(MCA), 2011 WL 1253892, at *4 (D.N.J. Mar. 28, 2011) (noting "[p]laintiff's use of the 'global term defendants . . . to apply to numerous parties without any specific allegations that would tie each particular defendant to the [cause of action] is not sufficient' under *Twombly* and its progeny") (citation omitted).

24. For all of these reasons, the J&J defendants are fraudulently joined.[1]

**(2)   There Is No Reasonable Possibility That Plaintiff Could Succeed In Piercing The Corporate Veil To Impute Any Alleged Liability Of DePuy To The J&J Defendants Because The Companies Are Wholly Separate And Distinct Entities.**

25. The J&J defendants are also fraudulently joined because there is no basis for piercing the corporate veil to impute any alleged liability of DePuy to them.

26. It is a basic tenet of corporate law that an entity may not be held liable for the acts of a sister or parent corporation "simply by dint of the corporate relationship." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010).

27. Numerous cases have so held with respect to parent companies. *See, e.g.*, *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998); *Trs. of Local 464A UFCW Union Pension Fund v. Wachovia Bank, N.A.*, No. 09-668 (WJM), 2009 U.S. Dist. LEXIS

---

[1]   The MDL court has allowed some claims by non-New Jersey plaintiffs to
*(cont'd)*

59796, at *8 (D.N.J. July 14, 2009) (granting motion to dismiss because "[p]laintiffs ma[de] no substantive allegations to compel departure from . . . bedrock principle" that "a parent corporation . . . is not liable for the acts of its subsidiaries") (citation omitted); *A.I. Credit Consumer Disc. Co. v. Premiere Foods, Inc.*, No. 04-4049 (WHW), 2007 U.S. Dist. LEXIS 81737, at *12 (D.N.J. Nov. 5, 2007) ("[P]iercing the corporate veil is 'an equitable remedy to be reserved for "***extraordinary circumstances***.""") (emphasis added) (citation omitted).

28.     The same is true of "sister" corporations – i.e., other wholly-owned subsidiaries owned by the same parent corporation. *Weston v. Progressive Com. Holdings, Inc.*, No. 10-980, 2011 WL 231709, at *2-3 (D. Del. Jan. 24, 2011) ("A corporation is also generally not liable for the acts of its sister corporation absent a showing that the sister corporation was an alter ego or acted as an agent."); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 341 n.44 ("As a matter of well-settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its . . . sister corporations . . . .").

29.     The corporate veil of a parent company may only be pierced if a plaintiff can prove that the subsidiary corporation was "a mere instrumentality of the parent." *State, Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (1983)

---

*(cont'd from previous page)*
proceed to trial against J&J, but none of those cases involved Wisconsin law.

(quoting *Mueller v. Seaboard Com. Corp.*, 73 A.2d 905, 908 (1950)).  To make such a showing, a plaintiff must first prove that the "parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." *Id.*  The plaintiff must then establish that the parent "abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice." *Id.*[2]

30.     In assessing the first requirement, there are several factors that a court should consider if they are present, including undercapitalization, failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records and whether the corporation is merely a facade for the operations of the dominant stockholder or stockholders.  *Craig v. Lake Asbestos of Quebec,*

---

[2]     New Jersey law applies to any purported veil-piercing theory because "[t]he [sheer] weight of authorities supports the theory that the laws of the state of incorporation govern whether to pierce the corporate veil." *Air Sea Int'l Forwarding, Inc. v. Glob. Imports & Trading, Inc.*, No. 03-268(PGS), 2008 WL 11510000, at *7 (D.N.J. Apr. 18, 2008), *report and recommendation adopted*, No. 03-cv-268 (PGS), 2008 WL 11509999 (D.N.J. June 2, 2008); *see also Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) ("Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs."); *D.R. Horton Inc.-N.J. v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778, at *20-21 (Law Div. Aug. 10, 2005) ("The apparent weight of authority agrees that veil-piercing analysis is governed by the law of the state of formation"; "conclud[ing] that the entity whose veil must be pierced as a threshold matter, Esplanade L.L.C., was both formed under New Jersey law, and maintained its most

*(cont'd)*

*Ltd.*, 843 F.2d 145, 150, 152 (3d Cir. 1988) ("The involvement in Cape's financial and managerial affairs fails to rise to the ***high standard*** of domination necessary to pierce the corporate veil set out in *Ventron*.") (emphasis added).  With regard to the second requirement, the plaintiff must demonstrate that the defendant used the affiliate corporation to perpetrate "a fraud, injustice, or the like." *Qile Chen v. HD Dimension, Corp.*, No. 10-863 (FLW), 2010 U.S. Dist. LEXIS 120599, at *12 (D.N.J. Nov. 15, 2010) (citation omitted).  In other words, the plaintiff must show that the parent company engaged in wrongful conduct – i.e., forming the subsidiary to "circumvent the law." *Local Union 825 v. McRand Contracting Co.*, No. 07-4490 (JAP), 2011 U.S. Dist. LEXIS 70674, at *17-18 (D.N.J. June 30, 2011) (declining to pierce the corporate veil because "[p]laintiffs have not produced the requisite proof of intent that [the company] was specifically set up as an attempt to perpetrate fraud or otherwise evade the law").

31.    The same analysis applies where a plaintiff has asserted claims against a sister corporation owned by the same parent company.  *See Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 141 (3d Cir. 1988).  As explained in *Gerling*, "[t]he few cases involving sister corporations under common control follow the same pattern as the cases involving a litigating subsidiary."  *Id.*  The "requisite control has been

_____
*(cont'd from previous page)*
significant contacts here, and [thus] New Jersey certainly has the interest in this case to apply its veil-piercing law").

14

found only where the sister corporation was found to be the alter ego of the litigating entity" or "acted as one" with the litigating entity "in effecting the transaction giving rise to" the litigation. *Id*.

32.   Consistent with this caselaw, federal courts in New Jersey and elsewhere have rejected attempts by plaintiffs to circumvent diversity jurisdiction by fraudulently joining a company whose liability hinges solely on the existence of an affiliated corporate relationship. *See, e.g.*, *Port Auth. v. Arcadian Corp.*, No. 96-Civ.-1635 (WGB), 1997 U.S. Dist. LEXIS 22500, at *5-6 (D.N.J. Oct. 2, 1997) (denying motion to remand where non-diverse defendant "is a holding company that does not engage in the manufacture, sale or design of the products at issue in this case" and "there is no colorable factual basis to assert that the corporate veil should be pierced"); *Weston*, 2011 WL 231709, at *3 (denying remand because the plaintiffs had "not pleaded or asserted any valid reason that would justify disregarding the corporate form and holding both a parent company and a sister company liable for the acts of [diverse defendant], the company that actually issued the policy or policies in question"); *Pegg v. United Servs. Auto. Ass'n*, No. 09-2108 (SRC), 2009 WL 2928920, at *2 (D.N.J. Sept. 9, 2009) (finding fraudulent joinder in insurance case where plaintiff failed to put forth any evidence in support of veil-piercing theory); *Sandage v. Cottrell, Inc.*, No. 05-cv-0720-MJR, 2006 WL 2710647, at *6 (S.D. Ill. Sept. 20, 2006) (denying remand in product-

15

liability action where plaintiff failed to plead sufficient facts to support veil-piercing theory against parent and sister corporations); *Brown v. Panasonic Corp.*, No. 06-cv-0267-MJR, 2006 WL 1388890, at *2-3 (S.D. Ill. May 18, 2006) (denying motion to remand in case involving personal injuries stemming from welding fumes where plaintiff could not pierce corporate veil under alter-ego theory absent evidence that the subsidiary was dominated by the parent company or that its corporate structure caused fraud or similar injustice); *see also Davis v. DePuy Orthopaedics, Inc.*, No. 3:11-CV-03526-K, 2012 WL 13228984, at *1 (N.D. Tex. Jan. 6, 2012) (order denying plaintiff's motion to remand in Pinnacle Cup System case involving fraudulent joinder of Johnson & Johnson); *Higley*, 2010 U.S. Dist. LEXIS 91153, at *4 (refusing to remand case involving allegedly defective airplane fuel pump where non-diverse parent company was fraudulently joined, in light of plaintiff's "generic" allegations); *Johnson Controls, Inc. v. J.F. Dunn Enters., Inc.*, No. 08-12045, 2009 WL 415706, at *3-5 (E.D. Mich. Feb. 19, 2009) (denying motion to remand on fraudulent-joinder grounds where affidavit by CEO showed that each defendant was a separate entity, the non-diverse defendant did not conduct the same business as the two diverse corporate defendants, and the non-diverse defendant was not a party to the disputed agreement).

33.    In *Port Authority*, for example, the Port Authority of New York and New Jersey asserted, *inter alia*, product-liability claims against the manufacturers

of ammonium-nitrate-based fertilizers, seeking damages flowing from the 1993 terrorist bombing of the World Trade Center.   The case was removed on the ground that one of the defendants – a non-diverse parent company – had been fraudulently joined.   1997 U.S. Dist. LEXIS 22500, at *2.   The court issued an order to show cause why the case should not be dismissed for lack of subject-matter jurisdiction, but ultimately determined that the case had been properly removed on fraudulent-joinder grounds.   *Id.* at *5-6.   The court explained that the non-diverse parent company "is a holding company that does not engage in the manufacture, sale or design of the products at issue in this case."   *Id.* at *5. Because "there is no colorable factual basis to assert that the corporate veil should be pierced . . . there is no colorable basis in the law for holding [the parent company] liable for the activities of its subsidiary."   *Id.* at *5-6.

34.     Here, as in *Port Authority*, plaintiff has asserted claims against affiliated corporations that "do[] not engage in the manufacture, sale or design of the products at issue in this case."   *Port Auth.*, 1997 U.S. Dist. LEXIS 22500, at *5-6.   As set forth in the declaration of Douglas Chia, Johnson & Johnson is a non-manufacturing holding company that is not – by its very nature – involved in the production of any products of its own.   (Chia Decl. ¶ 9.)   Johnson & Johnson Services, Inc. does not even have any "ownership interest in DePuy."   (*Id.* ¶ 6.) Instead, it is merely a non-manufacturing "sister" entity owned by the same parent

company, Johnson & Johnson. (*Id.* ¶¶ 6, 9.) Moreover, neither of these companies exercises any "direct control or involvement in the day-to-day management of DePuy employees." (*Id.* ¶ 14.)

35.    Nor has plaintiff's Complaint provided any "colorable factual basis to assert that the corporate veil should be pierced." *Port Auth.*, 1997 U.S. Dist. LEXIS 22500, at *5-6. Plaintiff has not alleged that DePuy is "so dominated" by either of the J&J defendants that it has "no separate existence" or functions merely as a conduit or "alter ego" for the in-state defendants. *Ventron Corp.*, 468 A.2d at 164; *see also Mueller*, 73 A.2d at 908. Nor could he. Each of the J&J defendants maintains separate corporate records, financial books and directors from DePuy. (Chia Decl. ¶¶ 15-16.) Plaintiff also fails to allege any facts capable of proving that DePuy "acted as one" with either of the J&J defendants in effecting the transaction at issue in this lawsuit.

36.    In short, plaintiff cannot establish the degree of "domination" by either of the J&J defendants over DePuy that is necessary to pierce the corporate veil. Nor can plaintiff prove that either of the J&J defendants intended to circumvent the law. For this reason as well, the J&J defendants are fraudulently joined with respect to all of plaintiff's claims.

### B.   Amount In Controversy

37.   Plaintiff alleges that he "suffered injuries, including but not limited to significant pain, metal wear, metal poisoning, loss of enjoyment of life, and limitation of daily activities," and "expects to continue suffering such injuries in the future." (Compl. ¶¶ 119-120.)   Plaintiff also seeks a variety of damages, including past and future medical expenses, past and future loss of earnings, pain and suffering, emotional distress and punitive and exemplary damages. (*See, e.g.*, *id.*, Prayer for Relief, ¶ (a)-(g).)

38.   It is widely recognized that claims for personal injuries like those asserted here facially meet the $75,000 jurisdictional threshold. *See, e.g., Yocham v. Novartis Pharms. Corp.*, No. 07-1810 (JBS), 2007 U.S. Dist. LEXIS 58938, at *7-8 (D.N.J. Aug. 13, 2007) ("it appears from the face of the [c]omplaint that the amount in controversy exceeds $ 75,000" because "[i]n her [c]omplaint, [p]laintiff alleges, among other things, damages relating to having experienced a 'life threatening' skin condition . . . which resulted in hospitalization . . . [and] [p]laintiff also seeks compensatory damages for 'past, present, and future pain and suffering,' lost earnings, past and future medical expenses and punitive damages") (citation omitted); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 692 F. Supp. 2d 1025, 1040 (S.D. Ill. 2010) ("Given the severe and ongoing nature of the injuries alleged, the [c]ourt finds that it is plausible and

supported by the preponderance of the evidence that the amount in controversy has been established."); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *Smith v. Wyeth, Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (similar).

39.    Thus, it is clear from the face of the Complaint that the amount in controversy exceeds $75,000.

## II.    THE DEPUY DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

40.    DePuy and DePuy Synthes Sales, Inc. were each served with plaintiff's Complaint on February 9, 2022. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

41.    The Superior Court of New Jersey, Middlesex County, is located within the District of New Jersey. *See* 28 U.S.C. § 1441(a).

42.    No previous application has been made for the relief requested herein.

43.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon the DePuy defendants, which papers include the Complaint, are attached collectively as **Exhibit A**. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for plaintiff and a copy is being filed with the Clerk of the Superior Court of New Jersey, Middlesex County.

44. The J&J defendants consent to removal even though such consent is not required. *See Bernsten v. Balli Steel, PLC*, No. 08-62, 2008 U.S. Dist. LEXIS 25892, at *24 (E.D. Pa. Mar. 31, 2008) ("[B]ecause ASI-Balli was fraudulently joined, the alleged joint venture's failure to join or consent to the removal pleading does not undermine the efficacy of the removal.").

**WHEREFORE**, the DePuy defendants respectfully remove this action from the Superior Court of New Jersey, Middlesex County, in the State of New Jersey, bearing Number MID-L-000708-22, to this Court.

Respectfully submitted,

Dated: March 11, 2022

_____
Michael C. Zogby
**FAEGRE DRINKER BIDDLE & REATH LLP**
600 Campus Drive
Florham Park, New Jersey 07932-1047
Tel. (973) 549-7000
michael.zogby@faegredrinker.com

*Attorneys for Defendants Medical Device Business Services, Inc., f/k/a DePuy Orthopaedics, Inc. and DePuy Synthes Sales, Inc.*